BARNES v. WILLIAMS' ADM'R et al.

(Court of Civil Appeals of Texas. Amarillo. Dec. 2, 1911. On Rehearing, Jan. 5, 1912. Rehearing Denied Feb. 2, 1912.)

1. PUBLIC LANDS (§ 173*)—SCHOOL LANDS—AWARD TO PURCHASER—VALIDITY—PARTIES.

The validity of an award of Texas school lands to purchaser may be adjudicated without making the Commissioner of the General Land Office a party.

[Ed. Note.—For other cases, see Public Lands, Cent. Dig. §§ 544–551; Dec. Dig. § 173.*]

2. PUBLIC LANDS (§ 173*)—AWARD TO PURCHASER—VALIDITY — ADJUDICATION—JURISDICTION.

Laws 1905, c. 29, relating to sales of public school lands, does not give the Supreme Court exclusive original jurisdiction of a proceeding to adjudge the validity of an award to a purchaser, and trespass to try title or a proceeding to quiet title in the district court is a proper remedy.

[Ed. Note.—For other cases, see Public Lands, Dec. Dig. § 173.*]

3. TRESPASS TO TRY TITLE (§ 33*)—CROSS-ACTION—PLEADING—SUFFICIENCY.

Under Sayles' Ann. Civ. St. 1897, art. 5250, subd. 5, providing that a petition in trespass to try title must allege that the opposing party withholds possession, an answer which alleges no ouster by plaintiff nor possession by him is insufficient as a cross-action.

[Ed. Note.—For other cases, see Trespass to Try Title, Dec. Dig. § 33.*]

4. PLEADING (§ 403*) — OBJECTIONS — REFERENCE TO ADVERSE PLEADING.

In passing on the sufficiency of a pleading, all allegations in the adversary's pleadings may be considered.

[Ed. Note.—For other cases, see Pleading, Cent. Dig. §§ 1343–1347; Dec. Dig. § 403.*]

5. PLEADING (§ 403*) — OBJECTIONS — CROSS-PETITION—REFERENCE TO ADVERSE PLEADINGS.

Even on nonsuit or attempted nonsuit by plaintiff, where defendant has so adopted allegations in plaintiff's pleadings as to show that he is relying thereon, such allegations will be looked to to determine the sufficiency of defendant's cross-petition.

[Ed. Note.—For other cases, see Pleading, Dec. Dig. § 403.*]

6. PUBLIC LANDS (§ 173*)—SCHOOL LANDS—ACTION—PLEADING.

In trespass to try title involving school lands which plaintiff claimed as purchaser under an award by the Commissioner of the General Land Office, an award was sufficient as

a pleading to remove the cloud from defendant's claimed title arising from a plaintiff's title where it pleaded invalidity of the prior award to plaintiff because he was not an actual settler on the land, setting out plaintiff's title and defendant's residence upon the land in good faith under proper application for an award of the land to him arbitrarily rejected by the commissioner, and where the answer prayed judgment for the land and for general and equitable relief, though defendant did not ask cancellation of the award to plaintiff, and even if he could have proved under his plea of not guilty every allegation in the answer.

[Ed. Note.—For other cases, see Public Lands, Dec. Dig. § 173.*]

7. PUBLIC LANDS (§ 173*)—AWARD TO PURCHASER—VALIDITY.

Since an award to a purchaser of school land does not fix title in the purchaser as against one making due application to purchase unless such purchaser has complied with the law authorizing an award, and was legally qualified to purchase, if plaintiff was not an actual setter upon the land when it was awarded to him, it remained open to settlement by defendant, and, if defendant complied with the law, his rights were not affected by a rejection of his application by the Commissioner of the General Land Office.

[Ed. Note.—For other cases, see Public Lands, Cent. Dig. §§ 544–551; Dec. Dig. § 173.*]

8. PLEADING (§ 356*)—TRIAL AMENDMENT—RIGHT TO MAKE.

Under district and county courts rule 27 (67 S. W. xxii), which provides that, when exceptions have been presented and decided, leave may be granted to either party to file an amendment consisting of one instrument separate from the previous pleadings and styled a "Trial Amendment," a pleading not filed to cure any defect in a previous pleading resulting from an adverse ruling is not a trial amendment, though so denominated, and is properly stricken.

[Ed. Note.—For other cases, see Pleading, Cent. Dig. §§ 1111–1119; Dec. Dig. § 356.*]

On Rehearing.

9. LIMITATION OF ACTIONS (§ 6*)—RETROACTIVE APPLICATION OF STATUTE—SUITS RELATING TO PUBLIC LANDS.

Laws 1905, c. 29, requiring suits to enforce a right to purchase public land to be brought within one year after the act took effect or after subsequent awards, applies to an award of lands made before passage of the act.

[Ed. Note.—For other cases, see Limitation of Actions, Dec. Dig. § 6.*]

10. PUBLIC LANDS (§ 173*)—SCHOOL LANDS—PLEADING—SUFFICIENCY.

In trespass to try title involving public school land awarded to plaintiff as a purchase, an answer in the nature of a plea to quiet title against plaintiff's claim was insufficient where the lands as described in the petition and in the answer were different tracts, though the discrepancy was a mere clerical error.

[Ed. Note.—For other cases, see Public Lands, Dec. Dig. § 173.*]

Appeal from District Court, Donley County; J. N. Browning, Judge.

Trespass to try title by J. B. Williams against L. C. Barnes, revived by Williams' widow and others on his death. Judgment for plaintiffs, and defendant appeals. Affirmed.

---

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key No. Series & Rep'r Indexes

A. T. Cole and H. B. White, for appellant. Madden, Trulove & Kimbrough, H. C. Pipkin, and J. H. O'Neal, for appellees.

GRAHAM, C. J. This case has twice before been before the courts of Civil Appeals (44 Tex. Civ. App. 298, 99 S. W. 127, and 111 S. W. 432), and once before our Supreme Court (102 Tex. 444, 119 S. W. 89), to which opinions we refer for a history of the litigation and for such data as may be necessary for a full understanding of the rights of the parties on issues arising from allegations not discussed in this opinion.

The record before us, in so far as it bears upon the questions hereinafter discussed, shows: That since perfecting the appeal reported in 111 S. W. 432, J. B. Williams died intestate, and that on October 17 and 18, 1910, his surviving wife, as well as his heirs and legal representatives, in proper and legal form and manner, appeared in this cause and filed amended pleadings in lieu of the original petition of J. B. Williams, filed herein on December 1, 1904, and that said amended pleadings, after alleging facts showing a right to appear and prosecute this suit, are in the ordinary form of an action of trespass to try title. That on October 18, 1910, L. C. Barnes filed an amended answer, in which he replied separately to the several pleadings filed by the plaintiffs on October 17 and 18, 1910, and that in each of said amended answers he pleaded the facts tending to show the invalidity of the Williams title and also the facts· on which he relied for recovery in substantially the same form and substance as he had alleged those facts in an answer filed in this cause on January 2, 1906; said portion of the pleadings as filed on January 2, 1906, reading as follows: "Defendant for special answer, if need be, says that the two tracts of land in controversy was and is public free school land, owned by the state of Texas, and for sale only to actual settlers; that said land is described as follows, to wit: Survey No. 48, block C–3, certificate No. 838, E. L. & R. R. Ry. Co., and survey No. 54, block C–3, certificate No. 5, D. & P. Ry. Co., both tracts being situated in Donley county. Defendant says that at the time the plaintiff made his applications to purchase said land, which was on, to wit, the 12th and 14th days of January, 1901, he was not an actual settler upon said land, or any part thereof, nor has he ever settled upon said land, or any part thereof, and resided thereon in good faith making same, or any part thereof, his home. Defendant further alleges that on, to wit, the 30th day of July, 1902, he filed his application to purchase survey No. 48 in block C–3, D. & P. Ry. Co., as a home, having prior thereto settled upon said land in good faith making it his home, and was at the time of making his said application residing thereon in good faith and making it his home; that said ap-

plication was in form of law, and duly sworn to, and was on said date filed with the county clerk of Donley county as required by law; that he also filed with said clerk his obligation for $39/40$ of the purchase price of said land, to wit, $312, and deposited with him the sum of $8, to be applied as first payment for said land. Defendant further says that on the same date, to wit, the 30th day of July, 1902, he also filed with said clerk his application to purchase survey No. 54, block C–3, E. L. & R. R. Ry. Co., as additional land to his said home section, it being within a radius of five miles of his said home section, and at the same time filed with said clerk his obligation to the state for $39/40$ of the purchase price thereof, to wit, the sum of $312, and deposited with said clerk the sum of $8 to be applied as the first payment therefor; that both of said tracts of land were classified as dry grazing, and, having been previously to the making of said applications to purchase appraised at $1 per acre, that said applications and obligations just described was by said clerk duly transmitted and filed in the General Land Office on, to wit, the 1st day of August, 1902, and said first payment was duly forwarded and deposited with the State Treasurer on, to wit, August 1, 1902. Defendant says that, notwithstanding the fact that' said land above described was at the time of making and filing of his said application upon the market for sale to actual settlers at the price mentioned, the Commissioner of the General Land Office arbitrarily declined to accept said applications and rejected same; and the State Treasurer returned to defendant the said sum of money deposited with him to be applied as the first payment for said land. Defendant further avers that prior to and since the filing of his said applications to purchase said land he has continuously resided upon and is now residing upon his said home section in good faith making it his home, and has erected valuable improvements upon said land in the sum of $1,000; that he has in all things complied with the law in making his said applications to purchase the said land, and in tendering the first payment to the state, and executing obligations for the unpaid purchase price. He has also complied with the law in settling upon said land, and residing thereon, in good faith making it his home, and was and is entitled to an award thereto. Wherefore defendant prays that he have judgment for said land, for cost of suit, for general and equitable relief."

Replying to the portion of the pleading above copied, each of the plaintiffs filed a supplemental petition, containing, among other things, the following: "(1) Plaintiffs demur to all the affirmative matter contained in said pleadings of the defendant generally, and say that the same are insufficient in law to constitute any defense to plaintiffs' suit or to constitute any cause of action against

them, and of this plaintiffs pray the judgment of the court. (2) Plaintiffs specially except to all of said pleadings wherein defendant attempts to set up the title to the lands in controversy and to plead over against the plaintiffs because it appears therefrom that said pleas seeking affirmative relief against the plaintiffs and for recovery of the land involved herein are each and all barred by the statute of limitations of one year in such cases made and provided, and of this they pray judgment of the court"—which said exceptions were by the court overruled and the trial upon its merits proceeded with.

After appellees had closed their evidence in chief and the appellant had begun the introduction of his evidence, and after the trial court had excluded certain evidence offered by appellant tending to prove the award to Williams invalid, appellant, with the consent of the court, filed a pleading on October 19, 1910, styled, "Defendant's Trial Amendment," in which said pleading appellant enlarged on the pleading which had formerly been filed by him on January 2, 1906, and brought forward in his several amendments so as to attack the validity of the Williams title on the additional ground that the land awarded to Williams was not on the market for sale at the time Williams made his application, and the award was made to him, and specifically alleged that the Williams title constituted a cloud upon his title, and prayed for the land and for cancellation of the award to Williams and the cloud on his title created thereby, which said trial amendment was by the court on motion of appellees on October 20, 1910, stricken from the pleadings and held for naught. On October 20, 1910, the trial below was closed before a jury in the district court of Donley county, resulting in a peremptory instruction for the plaintiffs, and, verdict being so returned, judgment was rendered thereon accordingly.

Appellant urges in this court four assignments of error; the first two being based on the ruling of the trial court in excluding evidence offered by appellant tending to prove that Williams, appellees' ancestor, had at no time, either before or after the land was awarded to him, occupied the land in controversy, the third assignment being based on the fact that the trial court held that portion of appellant's pleadings filed on January 2, 1906, and copied above, insufficient as a cross-action to prevent the statute of limitations provided for in Act 1905, p. 35, barring a recovery by appellant, and the fourth assignment being based on the action of the trial court in striking out and refusing to consider appellant's pleading hereinbefore referred to and styled "Defendant's Trial Amendment," and filed on October 19, 1910.

From the foregoing statement it will be seen that the controlling questions involved on this appeal are:

(1) Has Act 1905, p. 35, relied on by appellees to sustain the action of the trial court, any application to this case under the record?

(2) If said act has an application to this case, under the record, was that portion of appellant's pleading first filed in this cause on January 2, 1906, and brought forward in his several amendments, as hereinbefore copied, sufficient in its allegations, either as a cross-action of trespass to try title, or to remove cloud from title?

For, if sufficient as a plea for either purpose, and the act of 1905 has an application to this case, the court below erred in excluding the evidence offered by appellant and tending to prove the invalidity of the Williams title; while, if the act of 1905 has no application to this cause, under the record, it was error for the trial court to exclude said evidence, as it was admissible under appellant's plea of not guilty.

We are of the opinion that the act of 1905 has no application to this case under the record, for the reason that the record shows that appellant is not claiming the right to buy or lease the lands in controversy, because of anything done by him or Williams, *since the act became operative, but is basing all such rights, if any he may have in and to the land, on the fact that he actually did all things resulting in a purchase by him of the lands from the state nearly three years before the act became operative; that is, he bases his claim upon an actual purchase of the land from the state in 1902, nearly three years before the act became operative.*

The act under consideration is as follows:

"Section 1. That *hereafter* all persons *claiming the right to purchase or lease* any public free school lands, or any lands belonging to the State University, or either of the state asylums, which have been heretofore or which may be hereafter sold or leased to any other person under any provision of the law authorizing the sale or lease of any of said lands, shall bring his suit therefor within one year after this act goes into effect, or after the date of the award of such sale or lease, if such award is made after the taking effect of this act, and not thereafter.

"Sec. 2. If no suit has been instituted by any person *claiming the right to purchase or lease* any of said lands within the period of time limited in the first section of this act, it shall be conclusive evidence that all requirements of the law with reference to the sale or lease of such lands have been complied with; provided that nothing in this act shall be construed to effect (affect) the state of Texas in any action or proceeding that may be brought by it in respect to any of said lands."

An inspection of the Session Acts of 1905 shows that the above law did not pass with

the emergency clause; that it was approved March 16, 1905; that the session at which it was passed adjourned on April 15, 1905; and that it therefore did not become operative until July 14, 1905.

From the language used in this law, we think it cannot be held to apply as a bar by limitation to any person or persons except those who may base their claim or claims on a right which arose after the law became operative, for the reason that, as we view it, by its provisions, it is limited in its operation as a bar by limitation to those who are therein prevented from using a remedy formerly existing to persons who base their claim to a right to purchase or lease lands on acts done by them after the law become operative, and we find nothing in the language of the law warranting the contention that it should be applied as a bar by limitation to persons who claim that they actually purchased or leased from the state before the law became operative. The act most clearly warrants a person whose rights arose either before or after the law became operative attacking the claim of his adversary, whether his adversary's award was made before or after the law became operative, provided said attack be sufficient in form and substance and made within one year after the law became operative, if the award to his adversary was made prior to the taking effect of the law, and within one year after the award to his adversary, if the award was made after the law became effective.

After diligent search, we have found no instance wherein the question now under discussion has been before the courts of this state, and we therefore are compelled to rest our conclusions upon the language used in the act itself. We are aware that many cases have been before our appellate courts in which the provisions of this law were applied, and resulted in a bar of an attempted attack upon an award made to an adversary, but in each case it is made to appear that the purchase or lease or attempted purchase or lease sought to be enforced, but held barred, had occurred since the law of 1905 became operative, and that the attack was made more than 12 months after the law became operative and more than 12 months after the purchase or lease had been awarded to the adversary. The case of Erp v. Tillman (Sup.) 131 S. W. 1057, cited by appellees in their brief, appears to be one of the most thoroughly considered cases to which our attention has been called, and in which the act in controversy was construed, and it was held in that case that, under the provisions of the act of 1905, Tillman was precluded from attacking Erp's title. That case, however, shows that the land had been awarded to Erp as a purchaser shortly before the act of 1905 was passed, and more than three months before it became operative, under circumstances which under all the decisions of our courts showed the award

to Erp a nullity, but it is also shown in that case that the application to purchase by Tillman and on which he relied to recover the land from Erp (he having in all respects complied with the law regulating such matters) was made February 3, 1907, after the act of 1905 had become operative, and that the decision further shows that on March 8, 1907, for the first time Tillman filed a cross-action, in which he attacked Erp's title; and it was held that the attack could not be successfully made as the act of 1905 was a complete bar thereto, notwithstanding Erp had acquired no title as a matter of law when the award was made to him. We do not find in that case, nor in any other to which our attention has been called, any authority for the proposition that the act of 1905 has any application to this case under the record, but that case is authority for the proposition that, if the facts contained in appellant's cross-action be true, Williams acquired no right or title to the lands in controversy in this suit as a result of the award made to him in 1901, and the same was subject to occupancy and settlement when Barnes went upon the land and made his application to purchase the same, and that as a result of said acts, if he in all respects complied with the law, he acquired a right to the title and possession of the land as against Williams. When considered in connection with the balance of the act, we think, in order for it to have application to a case like this one, the first portion of section 1 would have to say, in substance, "All persons claiming to have heretofore purchased or leased, or the right to hereafter purchase or lease," etc., instead of saying as it does, "That hereafter all persons claiming the right to purchase or lease." In other words, we think the act should be construed just as it would be, were some of the words so transposed as to make it read as follows: "That all persons claiming the right to hereafter purchase or lease," etc.— and we so construe it.

[1, 2] The question is raised in this court by appellees as to the power of any tribunal to pass on the sufficiency of the award made to Williams in 1901, to which the Commissioner of the General Land Office of the state of Texas is not a party, and whether as a result of the act of 1905 the Supreme Court of Texas has not exclusive original jurisdiction in such a proceeding. We are unable to agree with appellees on either of said contentions, for the reason that prior to the taking effect of the act of 1905 our courts had in many cases recognized the right of litigants to test the validity of an award without the Commissioner of the General Land Office of the State of Texas being a party thereto (Boaz v. Powell, 96 Tex. 3, 69 S. W. 976; Jones v. Wright, 98 Tex. 457, 84 S. W. 1053; Jones v. Wright, 92 S. W. 1010; Barnes v. Williams, 102 Tex. 444, 119 S. W. 89); and, while adjudicated cases show in many instances that the validity of an award made

to a supposed purchaser has been tested through an application for mandamus by the Supreme Court, we find nothing in any of said decisions indicating that either before or since the taking effect of the act of 1905 the validity of an award made by the Commissioner of the General Land Office could not be tested in an action of trespass to try title, or a proceeding to remove cloud from title in the district courts of this state on proper pleadings and proof, save a statement made by Justice Williams in the case of Erp v. Tillman, above referred to, which might be susceptible of that construction, but as that statement was not necessary to a disposition of that case, and we see no sound reason why such a rule should be applied as a result of the act of 1905, when it was not applied prior thereto, we think that neither the act of 1905 nor the language of Judge Williams in the Erp Case should be given that effect. The decision of our Supreme Court in this case, as found in 102 Tex. 444, 119 S. W. 89, by inference at least, sustains our conclusion that such questions can now be litigated in our district courts without the Commissioner of the General Land Office or the state of Texas being made a party thereto, as we must assume, though the act of 1905 was not referred to by the Supreme Court in that decision, that the court was aware of the existence of the statute and the effect that should be given it, and that, had the court thought the relief sought by appellant could not be maintained in the district court, either because such matters as are set up by appellant could not be litigated except by the Commissioner of the General Land Office or the state of Texas being made a party thereto or because the Supreme Court had exclusive original jurisdiction in such cases, it is to be assumed that the Supreme Court would have so said, instead of reversing and remanding the cause for further proceedings in a court having no jurisdiction to try the only issues involved— that of the validity of the award to Williams, and whether or not appellant had complied with the law in such manner as to entitle him to recover the land as against Williams. The record in this case as it was then before the Supreme Court showed without question that the award had actually been made to Williams by the Commissioner of the General Land Office, as well as the date of said award, and that it was before appellant went upon the land or attempted to purchase same, and the record before that court also showed the date on which appellant went upon the land and made his application for the purchase thereof, including the grounds on which he based his claim to the land. We therefore hold that the district court had power to try and dispose of the issue of the validity of the Williams title as well as the validity and binding force of the alleged Barnes' title and to enter such judgment as the facts warranted, properly

awarding the title and possession of the land, without parties other than those appearing herein, upon proper pleading and proof.

[3] We are of the opinion that the portion of appellant's pleading copied herein and originally filed January 2, 1906, is insufficient as a statutory cross-action of trespass to try title, in that no allegation is made of ouster of appellant by appellees, nor is there any allegation of possession by appellees. Article 5250, Sayles' Annotated Civil Statutes 1897, provides the requisites of a petition in trespass to try title, and in subdivision 5 thereof provides, in substance, a necessary allegation to the effect that the opposing party entered upon and dispossessed and withholds from possession of the premises.

[4] Most of the adjudicated cases in which the sufficiency of a cross-action has been before our courts arose as a result of the plaintiff taking or attempting to take a nonsuit, and in such cases our courts have usually held that the allegations in a cross-action must be sufficient within themselves. Hoodless. v. Winter, 80 Tex. 638, 16 S. W. 427; Short v. Hepburn, 89 Tex. 622, 35 S. W. 1056; Free v. Robert Burgess & Son, 133 S. W. 421. Where no question of nonsuit is involved, however, it would appear from the holdings of our courts in adjudicated cases that in passing on the sufficiency of the pleadings of either party all allegations made in the pleadings of his adversary may be looked to and considered as a means of testing the sufficiency of the pleadings as a whole to warrant or support a recovery. Railway Co. v. Anderson, 76 Tex. 244, 13 S. W. 196, and Willis v. Lockett, 26 S. W. 419.

[5] Even in cases of a nonsuit or attempted nonsuit by plaintiff, it would appear that, where defendant has so referred to or adopted allegations of fact in plaintiff's pleadings as to show he was relying thereon in part for relief, such allegations in plaintiff's pleadings will be looked to in considering the sufficiency of defendant's cross-action to entitle him to proceed thereon. Girard v. Ellis, 24 S. W. 967. Because neither the allegations in that portion of appellant's pleading hereinbefore copied when considered alone, nor in connection with the allegations in appellees' pleading, show a dispossession of appellant by appellees or a retention of possession by appellees as against appellant, we hold that the pleading under consideration was and is insufficient as a statutory cross-action of trespass to try title. Having reached the conclusion that the act of 1905 has no application to this case under the record, and that appellant's plea was insufficient as a cross-action of trespass to try title, and that the district court had jurisdiction to try and dispose of the issues sought to be raised therein, without parties other than those who had appeared and pleaded in the cause, we will now consider

whether or not said pleading of appellant filed in this cause on January 2, 1906, and brought forward in his several amendments so that it was a part of the pleading on which he went to trial, was and is sufficient as a plea for the lands and to remove the cloud from his title by the cancellation of the apparent title in appellees, and thus to stop the running of the statute of limitation, as provided in the act of 1905, even if said act had an application to this case.

[6] After a critical reading of said portion of said pleading, in the light of the decisions of our courts on kindred questions (for we have found no case where the sufficiency of the plea contemplated under the act of 1905 has been brought directly under review), we have concluded that said pleading is sufficient as a plea to remove cloud from appellant's alleged title arising from the issuance of an award to Williams, and to recover the title and possession of the lands by appellant as against Williams. It will be observed from reading appellant's plea that the very instruments constituting the Williams title and the cloud upon appellant's title, including their date and the property covered by them, as well as their apparent evidence of title, are alleged in said cross-action, and that the reasons on which the attack is based are also therein given, allegation being made in detail showing that appellant has a right to the lands as against appellees, if the allegations be true, and appellees' apparent title be held invalid.

In passing upon the sufficiency of a pleading . as a cross-action filed by defendants, plaintiffs having taken a nonsuit, in the case of Hoodless v. Winter, 80 Tex. 638, 16 S. W. 427, Justice Henry, speaking for the Supreme Court, held the pleading in that case insufficient as a cross-action to prevent plaintiff from taking a nonsuit, and to entitle defendant to a recovery of the land, and in so doing uses this language: "The defendant must not only pray for affirmative relief, but he must state the facts showing that he has a cause of action." And again, in the same opinion, this language is used: "In this case the defendant failed to point out any particular deed or to allege any facts showing how it was that any muniment of title held or claimed by plaintiffs was such a cloud upon their title, as relief should be given them against, under the equitable principles controlling such suits." In that case the plaintiff had sued in trespass to try title for lands. The defendants had answered separately, claiming different portions of the land severally, describing the lands claimed by them severally, and then alleged that the plaintiff was setting up some kind of a fraudulent claim to the lands and by so doing cast a cloud upon their hitherto good title, thereby beclouding defendants' title, and then prayed that the plaintiff's title be canceled, declared null and void, and that defendants be quieted in their title.

From the quotations from that opinion, above copied, the grounds upon which the court in that case held the cross-action insufficient is made clear. An inspection of the pleading in that case will show the same insufficient as a cross-action of trespass to try title, for the reasons hereinbefore discussed, and also insufficient as a plea to remove cloud from title, in that there was no allegation pointing out what instrument or instruments constituted the cloud upon the title. That this is the proper construction to be placed on that opinion, see the opinion of Justice Brown in the case of Short v. Hepburn, 89 Tex. 622, 35 S. W. 1056, where he comments at length on the opinion in that case and construes it, and in doing so uses this language: "After a careful examination of the opinion written by Judge Henry, in the case of Hoodless v. Winter, 80 Tex. 638, 16 S. W. 427, we are of the opinion that it was the intention of the court to hold that the defendant's answer in that case did not contain the allegations necessary to constitute it a cross-action. While the clause of the answer quoted in the opinion alleged the legal and equitable title to the land described therein was in the defendant, and that the plaintiffs were asserting some kind of a pretended or fraudulent title to the land, which cast a cloud upon the title of defendant, and prayed for removal of the cloud from his title, and for general relief, it failed to allege specifically what title it was sought to annul, and therefore was by the court held to be defective as a plea to remove cloud from his title. Considered as an action of trespass to try title upon the allegation of legal and equitable ownership, it failed to comply with the requirements of the statute, in that it alleged no ouster by plaintiff."

As tending to show that the plea under consideration is insufficient as a cross-action, appellant cites us to the late case of Free v. Burgess, 133 S. W. 421, in which case the writer, being of counsel, contended that the plea involved was sufficient as a cross-action to entitle his client to a trial thereon as against the opposing party's desire to take a nonsuit. The Supreme Court in that case held the plea insufficient as a cross-action, but in so doing did not specifically point out the particulars in which the plea was insufficient, though Justice Connor, who dissented from the majority in the Court of Civil Appeals, does point out the defect in the plea, as shown at page 423, 133 S. W., in this language: "There is no averment of nonindebtedness or of fraud in the execution of the notes upon which the judgments had been rendered, or that appellees had or were intending to harass appellant by a wrongful institution of other suits." That case was one in which Burgess & Son

had sued Free on foreign judgments, and the defendants had pleaded a want of service or appearance, as well as such other facts as tended to show the judgments had not been recovered in accordance with law in the foreign state, and then prayed that plaintiffs take nothing by their suit, and that they be enjoined from further suing or otherwise harassing defendants with the cause of action sued on, and then prayed for general and special relief, legal and equitable. Whereupon plaintiffs took a nonsuit, and, the court declining to allow defendant to proceed on his cross-action, the case was appealed.

Even if it be contended in this case that appellant could have proven under his plea of not guilty everything alleged in his pleading under consideration, still, if the facts alleged, coupled with his prayer, be sufficient to warrant also affirmative relief in the nature of a cross-recovery, he should be granted such relief on said pleading if sustained by his proof. Short v. Hepburn, 89 Tex. 622, 624, 35 S. W. 1056, where, on page 1057, Justice Brown, in discussing the question in hand, uses this language: "The matter upon which the defendant may file a cross-bill is not restricted to such as he could not introduce under his plea of not guilty, but may embrace matters which he could avail himself of as a defense, as well as such matters as it would be necessary to plead specially in order to obtain relief, *or it may consist of either without the other.*" It will be observed that appellant did not in specific terms pray for a cancellation of the award to appellees or their ancestor as a means of removing a cloud from his alleged title, nor does he in specific terms pray for a removal of a cloud from his title. He does, however, as we think, allege such facts, which, if true, would entitle him to this relief on a proper prayer, and as he prayed for the lands as against appellees, which could not be granted unless the award to appellees or their ancestor be held void, and further prayed for general and equitable relief, we think the prayer, based on the facts alleged, sufficient, if proven, to sustain a judgment removing the cloud from appellant's title and canceling the award to appellees and their ancestor and vesting the title in appellant as against appellees.

[7] It being the law that the acceptance of the application of the proposed purchase by the Commissioner of the General Land Office and the issuance of an award to him does not in law take the land off of the market or vest any right or title in the awardee, as against one who has complied with the law and makes application for the purchase of the land, unless the proposed purchaser first mentioned has brought himself within the terms of the law, and was therefore competent and legally able to take the land as a purchaser, it follows that, if Williams was not in law living upon the land when he applied to purchase it and when it was awarded to him, it still remained subject to occupancy by Barnes or any other legal applicant (Pohle v. Robertson, 102 Tex. 274, 115 S. W. 1167, and Briggs v. Key, 30 Tex. Civ. App. 565, 71 S. W. 43); and if the land was open to settlement when Barnes went upon it, and he in all respects complied with the law so far as was required of him, the fact that the Commissioner of the General Land Office rejected his proffered purchase did not deprive him of the legal rights flowing from his having performed his legal duty, and the sale was as to him, as complete as if an award had been made to him by the Commissioner of the General Land Office. Hazelwood v. Rogan, 95 Tex. 295, 67 S. W. 80, and Tillman v. Erp, 121 S. W. 547.

[8] We are of the opinion that the court below did not abuse its discretionary power in striking out appellant's pleading, styled "Defendant's Trial Amendment," even after same had been filed, as under rule 27 (67 S. W. xxii), for government of the district and county courts, as construed by Chief Justice Willie in the case of Contreras v. Haynes, 61 Tex. 103, it would appear that the pleading stricken out was not in fact a trial amendment, as it was not filed to cure any defect in appellant's pleadings resulting from an adverse ruling of the trial court on exceptions or demurrers thereto, after the cause had been called for trial. In view of another trial, however, we will say that, even if the act of 1905 applied to this case, the matters sought to be urged in the pleading, styled "Defendant's Trial Amendment," and which had not been mentioned in his pleading filed first on January 2, 1906, would not be affected by the act, as it applies only to the remedy, and the cross-action filed on January 2, 1906, being sufficient to prevent the running of the statute of limitation, appellant should be allowed by a proper amendment filed at a proper time, before the trial, to urge as many reasons showing the invalidity of the award to Williams as he thinks his evidence will support.

It follows from what we have said that the court erred in holding that the act of 1905 applied to this case; that he also erred in holding the cross-action pleaded by appellant insufficient as a cross-action to remove cloud from title and cancel the award to Williams; and that he also erred in excluding the evidence offered by appellant in support of said pleading, and which tended to show that the award to Williams was void when made, and for said errors the judgment of the court below will be reversed and the cause remanded for further proceedings, and it is so ordered.

### On Rehearing.

On December 2, 1911, in a written opinion, this court, speaking through the writer, reversed and remanded this cause hold-

ing that Act 1905, p. 35, had no application to the facts in this case, and also holding that the pleading first filed by appellant on January 2, 1906, and copied in the original opinion, was sufficient as a cross-action to remove cloud from title, and that, therefore, the trial court erred in excluding evidence tendered by appellant which tended to show that Williams' title was invalid.

[9] The case is now before us on appellee's motion for rehearing, in which our attention for the first time is called to the case of Wyerts v. Terrell et al., 100 Tex. 409, 100 S. W. 133, and in which it is also for the first time pointed out that the lands claimed by appellant in his said cross-action as therein described are other and different lands than those awarded to appellee's ancestor, and for which this suit was brought. In the case of Wyerts v. Terrell, supra, Wyerts had made application to purchase the lands in controversy in that suit prior to the act of 1905 becoming operative, but failed to institute any suit for the land for more than a year after the act became operative against Mrs. Swan, to whom the Commissioner of the General Land Office had awarded the land prior to Wyerts making application to purchase same. In our original opinion in this case we held that the act of 1905 did not apply as a bar against those whose rights had arisen before the act became operative, but in the Wyerts Case the Supreme Court of this state places a different construction on that act, and in speaking through Justice Williams uses this language: "Some questions are made by relator as to the validity of the reinstatement of the contract of sale under which correspondents claim, but we are of the opinion that they cannot now be made by him. More than a year elapsed before the institution of this proceeding after the act of 1905 prescribing the time in which persons, such as relator, may attack sales of school lands made to others took effect. We think the statute applies to the case, and bars the remedy sought." And as the facts in that case, in so far as the legal question involved is concerned, are identical with the facts in this case, in deference to the opinion of the Supreme Court, as we construe it and as announced in that case, we now hold that the act of 1905, on page 35, does apply to this case.

[10] In disposing of this case originally, our attention was not called by either party to the suit in pleadings, briefs, or otherwise to the fact that the pleading on which appellant relies to prevent the bar provided for in the act of 1905 fails to show that appellant has any kind of interest in the lands sued for by appellees' ancestor, and in disposing of the appeal we assumed without critical examination of the lands claimed by appellant and described in his cross-action were the same as those sued for by appellees. An inspection of said plea, however, shows that appellant therein claims a right to purchase or to have purchased survey No. 48, in block C–3, D. & P. Ry. Co., as a home, and survey 54, block C–3, E. L. & R. R. Ry. Co., as additional land, while an inspection of appellees' pleadings, as well as the judgment rendered below, show that appellees were claiming the right and title to survey No. 48, block C–3, E. L. & R. R. Ry. Co. lands and survey No. 54, block C–3, D. & P. Ry. Co. lands, thus showing that appellees sued for and claimed different lands altogether from those in which appellant in his cross-action claimed any right or interest.

We have examined the statement of facts, and find therefrom that appellant introduced on the trial below without any objection applications made by him to the Commissioner of the General Land Office to purchase the lands sued for by appellees; in fact, the entire record tends strongly to show that appellant through inadvertence misdescribed in his cross-action the lands he intended to describe and sue for therein. Such being the case, in an ordinary proceeding, we would be inclined to hold that the description of the lands as given in appellant's cross-action was a clerical error, but as we understand the law, in order for a pleading to remove cloud from title to be sufficient as such, it must not only show specifically what constitutes the cloud, but it must also contain such allegations as show that the pleader owns or has rights in the property, title to which is beclouded, as requires that a court of equity quiet the pleader's title by removing said cloud. Under appellant's pleadings, as they appear in the transcript, we think because of the description of the only property he tends to show himself entitled to or to have any right in, in said pleadings, is not that which he alleges to be beclouded by appellees' claim, especially in view of the liberal construction given the act of 1905 by the Supreme Court of this state as a bar by limitations of actions such as appellant seeks to set up in his cross-action, we have reached the conclusion that we are not warranted in holding that the description of the lands claimed by appellant in his cross-action has been as a result of a clerical error misdescribed, and in construing said pleadings as if the lands sued for by appellees had been described therein.

For the reasons above stated, we now hold that appellant's pleading first filed on January 2, 1902, herein was and is insufficient as a cross-action either in trespass to try title or as an action to remove cloud from title, and that the act of 1905 became and was at the time of the trial below a complete bar against appellant's attacking appellees' title, and for these reasons we hold that the trial court did not err in excluding as evidence the testimony which tended to show appellees' title invalid.

The motion for rehearing is therefore

granted. The judgment of reversal heretofore rendered by this court is set aside and judgment is here now rendered by this court affirming the judgment of the trial court, and it is so ordered.