WESTERN UNION TELEGRAPH COMPANY v. J. G. POWELL.

Decided March 17, 1909.

**1.—Telegraph—Damages Resulting—Notice.**

Instructions considered and held to properly submit the issue, in an action for failing to deliver a telegram, of defendant's liability for personal injury to himself as well as that to his wife by exposure caused by failure of the party addressed to meet them with carriage at destination. Message and information communicated therewith by sender held sufficient to enable the telegraph company to contemplate such damages as a result of its negligent failure to make delivery.

**2.—Telegraph—Damages—Evidence.**

Damages being claimed by reason of failure of party to whom message was sent to meet the sender and his sick wife at the destination of their journey, evidence that the party addressed had previously been notified by letter of the illness of the wife, who was his daughter, was admissible to show that the request would probably have been complied with if the telegram had been delivered.

**3.—Telegraph—Damages—Exposure to Weather—Contributory Negligence.**

Charge on the subject of contributory negligence of plaintiff, the sender of a telegram, in unnecessary exposure of himself and wife to the weather considered and held to properly present that issue, treating negligence therein as a question of fact.

Appeal from the District Court of Robertson County. Tried below before Hon. J. C. Scott.

*L. A. Hill* (*Geo. H. Fearons* and *N. L. Lindsley*, of counsel), for appellant.—When two parties have made a contract which one of them has broken, the damages which the other ought to receive in respect of such breach of contract should be such as may fairly and reasonably be considered as arising naturally, that is, according to the usual course of things, from such breach of contract itself, or as may reasonably be supposed to have been in contemplation of the parties at the time that they made the contract, as the probable result of the breach of it. Western U. Tel. Co. v. Smith, 76 Texas, 253; Western U. Tel. Co. v. Coffin, 88 Texas, 94; Western U. Tel. Co. v.

Taylor, 81 S. W., 69; Western U. Tel. Co. v. Campbell, 36 Texas Civ. App., 276; Western U. Tel. Co. v. Carter, 85 Texas, 580; Western U. Tel. Co. v. Landry, 108 S. W., 466; Western U. Tel. Co. v. Ragland, 61 S. W., 421.

On the breach of a contract the party injured thereby may recover damages incidental to and caused by the breach and reasonably in contemplation of the parties. Railway Co. v. May, 44 S. W., 408; Railway Co. v. Belcher, 89 Texas, 428; King v. Watson, 2 App. C. C. (Willson), sec. 283; Western U. Tel. Co. v. Murray, 68 S. W., 549.

*Bailey, Woods & Morehead,* for appellee.

RICE, ASSOCIATE JUSTICE.—This is a suit by appellee against appellant for the recovery of damages arising from a failure to transmit and deliver the following telegram:

> "Hempstead, Texas, Nov. 18, 1906.
>
> "E. B. Long,
>   "Bremond, Texas.
>     "Meet us at 3:30 p. m.. Ollie very sick.
>
> "J. G. Powell."

It was alleged that plaintiff paid the customary toll thereon, informing the agent that the said Long was then living in the town of Bremond, and that he and his wife, who was sick, were then on their way to Bremond, and that he desired said Long to meet both himself and wife at the depot with a conveyance to take them to his home. That about a month before that time his wife had undergone a. serious operation, from which she was convalescing, and that on the morning of November 18, the weather being pleasant, he started with his wife from Houston, where he then resided, via the H. & T. C. Railway, to Bremond, Texas, to visit her parents, said Long being her father; that before reaching Hempstead the weather turned cold, a wet morning having set in, which caused the sending of said telegram; that after the delivery of said telegram to appellant's agent at Hempstead, plaintiff and wife continued their journey to Bremond, where they arrived the same afternoon, at which time it was very cold and raining; that after waiting a reasonable length of time at the station, expecting Mr. Long to come for them, he asked the agent if his telegram had been delivered to said Long, and was informed by him that no such telegram had been received. Whereupon he went out through the rain to a livery stable, a distance of some 200 yards away, to procure a conveyance for himself and wife, but finding no one at the stable returned to the depot after which he made a second trip to the stable and finally obtained a conveyance with which he took his wife to the residence of her father, some quarter of a mile distant from the depot. That more than an hour elapsed from their arrival at the depot until they reached the residence of said Long. That by reason of the failure of the defendant to transmit and deliver said message, the said Long failed to meet them, whereby plaintiff

himself, in the effort to secure a conveyance, became wet on account of the exposure to the rain then falling, and that his wife was compelled to remain in the waiting-room during the interim, she being weak from her recent severe illness, and that while waiting in said depot she became very cold and fatigued from having to sit up in said room, there being no place where she could lie down, and that on account of the exposure she became wet, contracted a severe cold and lagrippe, and again suffered pain from the parts affected by the operation she had recently undergone, and from all of which she was made sick and confined to her room for several weeks, to plaintiff's damage $750.

Plaintiff further alleged that while out searching for said conveyance he became wet and chilled from said exposure, contracted a severe cold, which developed into lagrippe and rheumatism, and for a month thereafter was confined to his bed, suffering intensely therefrom, and has ever since continually suffered, to his damage in the sum of $800. It is alleged that he was a physician, capable of earning and was earning the sum of $200 per month, and that because of said injuries he lost two months' time, to his further damage in the sum of $400; that during the sickness of himself and wife he was compelled to expend the further sum of $49.50 for medicines, for all of which sums, together with twenty-five cents paid for said message, plaintiff sued.

The defendant answered by exceptions, general denial and specially that said Long resided in the country, about ten miles from Bremond, and had so resided for many years, and that said fact was well known, and that if said Long then resided in Bremond, he had recently removed there, and the fact of his removal was not known, or if known was only known to a very few people in the town of Bremond; and likewise pleaded its rules and regulations concerning delivery of messages beyond one-half mile limits of its office. Further, that on the arrival of said message inquiry was made and answer given that Long lived ten miles in the country, and thereupon its operator sent a service message to its Hempstead office, notifying it that said message was undelivered, as said Long lived in the country. Defendant further answered that plaintiff's telegram, by its language, did not put defendant upon notice that plaintiff or "Ollie" were traveling upon a railroad train, or on what railroad they were traveling, and that no such damages as alleged by plaintiff were in contemplation of the parties at the time of making said contract. Defendant also pleaded that plaintiff was guilty of contributory negligence in not going to a nearby hotel, and in failing to inform its agent of the fact that he wanted a buggy, who, if he had done so, would have procured one for him; and further, that plaintiff was guilty of contributory negligence in voluntarily going out in the rain and exposing himself in an effort to secure a buggy.

There was a jury trial, resulting in a verdict and judgment for the plaintiff for the sum of $750, from which this appeal is prosecuted. The facts proven, as shown by the record, sustain the averments of the petition.

Appellant's first, second, third, fourth and fifth assignments of

error are predicated upon the supposed error of the court in giving the following charge to the jury, to wit:

"You are further instructed that if you believe from a preponderance of the testimony that plaintiff delivered to defendant's agent at Hempstead, Texas, on or about the date alleged in the petition, a telegram in terms substantially as alleged in his petition, and you further believe that at the time of such delivery to said agent at Hempstead, plaintiff advised and informed said agent that the purpose of such telegram was to have the said Long to meet himself, as well as his wife, at the depot in Bremond, Texas, and you further believe that said defendant failed to use ordinary care in the transmission and delivery of said telegram, and that plaintiff was not guilty of contributory negligence, as those terms are hereinbefore defined to you, and you further believe that the injuries or damages complained of by plaintiff, if any, were the proximate result of the negligence of defendant, if any, you will find for the plaintiff and assess his damages in such sum as if paid now, will reasonably compensate him for the physical suffering of himself and wife, if any you believe they suffered because of the failure to transmit and deliver said telegram; for such loss of time, if any, as you believe plaintiff sustained by reason thereof; for such expense, if any, for medicines for himself and wife by reason of such failure, if failure you believe there was; and for the sum of twenty-five cents paid for such telegram; but in this connection you are charged to exclude all other elements of damages from your consideration than those hereinabove enumerated, and also limiting your consideration of damages or injuries, if any, to those which you believe from the evidence to have resulted proximately from the defendant's negligence, if you believe it was negligent, as submitted in this charge.

You are also instructed that unless you believe from a preponderance of the testimony that plaintiff advised and informed defendant's agent at Hempstead that the purpose of said telegram was to have said Long meet himself, as well as his wife, Ollie, at Bremond, you will not consider any injuries, you may believe he suffered or sustained by reason of his own physical or mental suffering, or loss of time or expenses for medicine for himself, if any, but you will only consider such injuries or suffering, if any, of his wife, and such money, if any, expended for medicine for his wife, which was the proximate result of the negligence, if any, of defendant in the transmission and delivery of said telegram, and the price paid for said telegram."

Appellant assails this charge so far as it authorizes a recovery on the part of plaintiff himself for injuries suffered by him, because it contends that no notice was given to it, either in the telegram or otherwise, that any such damage as sued for would result to plaintiff from a breach of said contract; nor that such damages as named in said charge were in contemplation of the parties at the time of the making of said contract. The telegram itself shows that Long was requested to "meet us," evidently meaning both plaintiff and his wife. Plaintiff testified that he sent the telegram from Hempstead, and at the time he handed same to the operator he asked him if he could get the message through immediately, telling him that his wife

was sick and that he wanted her father to meet her at the train, to which he replied that "he could get it through." "That I said in the message *meet us, myself and wife. I think my statement was to meet us at the train at* 3:30 *that evening.*" It was shown that the weather was pleasant when they left Houston and that it got cold and began to rain before reaching Hempstead. From this it clearly appears that the company at the time of the receipt of the message understood, both from the message itself, as well as from the statement of the plaintiff, that the purpose of sending it was to have said Long, the father of plaintiff's wife, to meet them at the depot. The operator was informed that his wife at that time was sick, and it further appears from the testimony of the operator that he understood that Powell was accompanying his wife on the train, which would reach Bremond at 3:30 that afternoon.

Appellant, it seems to us, is liable for such damages as might reasonably have been anticipated would have resulted from a failure of plaintiff's father to meet them at the train. It had notice of the fact that it was then cold and raining, and that plaintiff's wife was sick. Certainly, it was within the contemplation of the parties to the contract, that in the event of a failure to transmit and deliver the telegram plaintiff would undertake to do what any reasonable man would do under the same or similar circumstances, that is, to go to the livery stable for the purpose of obtaining a conveyance to take his wife to her father's home. He could not remain in the depot with his sick wife, and if in taking her to her father's home he and she suffered injuries from the inclement weather then prevailing, the same were such damages as could be recovered, because they were the proximate result of such failure of duty on the part of defendant. (Western Union Tel. Co. v. Campbell, 36 Texas Civ. App., 276; Western Union Tel. Co. v. Karr, 5 Texas Civ. App., 60, 24 S. W., 302; Western Union Tel. Co. v. Pruett, 35 S. W., 78; see also vol. 27, Am. & Eng. Ency. Law, 2d ed., p. 1059.) The charge complained of was, we think, a clear and pertinent application of the law to the facts of the case, and directly instructed the jury that plaintiff himself could recover nothing for his individual injuries, unless it was shown that defendant's agent was informed by him that the purpose of the telegram was to have said Long meet himself, as well as his wife. We therefore overrule these assignments.

We overrule the sixth and seventh assignments, because we think that under the allegations of the petition it was competent to show that Long knew, from a letter received from his daughter, that she had been sick, and was expecting a telegram notifying him to meet plaintiff and his wife, and that had he received said telegram he would have known on which train to have met them, and that he would have met them with a suitable conveyance and have brought plaintiff sufficient wraps for their comfort.

By its eighth and ninth assignments appellant urges that plaintiff was guilty of contributory negligence in failing to advise its agent upon his arrival at Bremond that it was necessary for him to obtain a conveyance, urging that if he had done so, said agent would have caused its porter to procure a conveyance to take his wife to her

father's, and also urging that plaintiff was guilty of contributory negligence in failing to take his wife to the "Cottage Hotel" nearby the depot, where he could have gotten someone to go for such conveyance, thereby preventing the injuries complained of. The court in this connection gave the following charge: "If you believe from the evidence that plaintiff went out in the rain and exposed himself to the weather after reaching Bremond, and procured a buggy and drove with his wife to the house of said Long, and you further believe that such conduct or any other conduct on the part of plaintiff caused or contributed to cause his own or his wife's sickness and suffering, as alleged in his petition; and you further believe that such conduct on the part of plaintiff was a failure on his part to use ordinary care, as that term has been hereinbefore defined to you, you will find for defendant as to all damages claimed for injuries and suffering of either himself or wife, and all moneys expended for medicines for either himself or wife, and for loss of time, although you may believe defendant was guilty of negligence in the transmission and delivery of said telegram."

The question of contributory negligence is one of fact and not of law, and we think was fully submitted to the jury by the above charge, and this issue was determined by their verdict against appellant. We therefore overrule these assignments.

The remaining assignments relate to questions that have been previously discussed and determined adversely to appellant, for which reason we deem it unnecessary to further consider them.

Finding no reversible error in the record, the judgment of the court below is affirmed.

*Affirmed.*

Writ of error refused.