APACHE COTTON OIL & MFG. CO. v. WATKINS & KELLY et al. (No. 1067.)

(Court of Civil Appeals of Texas, Amarillo. Nov. 29, 1916.)

1. CONTINUANCE ☞19, 20(5) — GROUNDS — ABSENCE OF COUNSEL.

The absence of a party or of the leading attorney is not ordinarily ground for the continuance of a case, and does not, at least, give a party an absolute right to a continuance.

[Ed. Note.—For other cases, see Continuance, Cent. Dig. §§ 41, 43–48, 57; Dec. Dig. ☞19, 20(5).]

2. CONTINUANCE ☞20(5)—PRESENCE OF SECONDARY COUNSEL.

The mere fact that secondary counsel are present does not alone warrant refusal of continuance for absence of leading counsel, where those in attendance are unfamiliar with and unable properly to try the case.

[Ed. Note.—For other cases, see Continuance, Cent. Dig. § 57; Dec. Dig. ☞20(5).]

3. CONTINUANCE ☞50 — ABSENCE OF COUNSEL—SUFFICIENCY OF SHOWING.

Where the affidavit made on April 24th showed that leading counsel were engaged in a trial in Oklahoma, and could not return before April 27th, and that no other counsel was familiar with the case, and that the local manager of plaintiff company was necessarily absent on business, and would not return until after April 27th, and that the case could not be tried without his testimony, while the plaintiff might not have been entitled to continuance for the term, yet, since the court did not adjourn for the term until May 5th, it should have granted postponement until April 27th as prayed.

[Ed. Note.—For other cases, see Continuance, Cent. Dig. § 146; Dec. Dig. ☞50.]

4. PLEADING ☞417 — AMENDMENT — WAIVER OF ERRORS.

If there was error in sustaining general demurrer to the petition, plaintiff waived it by filing an amended petition.

[Ed. Note.—For other cases, see Pleading, Cent. Dig. §§ 1401, 1402; Dec. Dig. ☞417.]

5. DISMISSAL AND NONSUIT ☞19(2)—RIGHT TO NONSUIT—EFFECT OF COUNTERCLAIM.

Under Vernon's Sayles' Ann. Civ. St. 1914, arts. 1900, 1955, as to right to nonsuit after counterclaim is filed, a plaintiff is entitled to a nonsuit, notwithstanding counterclaim, as to his own cause, without dismissal of or prejudice to the defendant's counterclaim.

[Ed. Note.—For other cases, see Dismissal and Nonsuit, Cent. Dig. §§ 34, 35; Dec. Dig. ☞19(2).]

---

6. **DISMISSAL AND NONSUIT** ☜➝19(2)—**RIGHT TO NONSUIT—EFFECT OF COUNTERCLAIM.**

Since the institution of a civil action for the purpose of enforcing a claim affords no cause of action against the plaintiff, whether the claim be real or unfounded, provided the person or property of the defendant is not seized or in some manner injuriously affected, and since charges of dishonest trading when appearing in the pleadings filed in civil cases are absolutely privileged, and the pleader cannot be held to answer in damages, where the court could not determine whether the counterclaim was based on vexatious suit, or on libel, for either of which the allegations were insufficient, since they showed merely institution of a suit with allegations implying dishonest trading, the filing of the counterclaim could not cut off plaintiff's right to nonsuit.

[Ed. Note.—For other cases, see Dismissal and Nonsuit, Cent. Dig. §§ 34, 35; Dec. Dig. ☜➝19(2).]

Appeal from District Court, Collingsworth County; J. A. Nabers, Judge.

Action by the Apache Cotton Oil & Manufacturing Company against M. P. Watkins and Ernest Kelly, as the partnership of Watkins & Kelly, and E. A. Patterson, wherein Watkins & Kelly filed a cross-complaint. Judgment on directed verdict for defendants on the original action, and for plaintiff on the cross-action, and plaintiff appeals. Reversed and remanded.

Bond, Melton & Melton, of Chickasha, Okl., and C. C. Small and J. C. Mahan, both of Wellington, for appellant. J. L. Lackey, of Claude, and R. H. Cocke, Jr., of Wellington, for appellees.

HALL, J. Appellant company sued M. P. Watkins and Ernest Kelly, a partnership, and E. A. Patterson, alleging in substance that on the 13th day of December, 1915, plaintiff purchased from the defendants three cars of cotton seed, two of them at $43 a ton, f. o. b. plaintiff's mill in Chickasha, Okl., and the third car at $39 per ton, f. o. b. cars at Dodsonville; that the seed so purchased arrived in Chickasha December 21, 1915, but prior to its arrival plaintiff paid drafts drawn by Watkins & Kelly for the amount due under the contract, and upon inspection after the delivery of the seed found they were not clean, sound, and dry, nor free from dirt, trash, and bolls, and were not therefore in accordance with the contract of purchase; that plaintiff immediately advised Patterson and Watkins & Kelly of the condition of the seed and requested advice as to the disposition thereof; failing to receive any advice, plaintiff unloaded the same for preservation, had them appraised, and sold all of the seed to the best advantage and for the best market price obtainable; that by reason of the failure of defendants to advise plaintiff as to the disposition of the seed demurrage charges had been assessed against the shipment in the sum of $42, which plaintiff had paid. Plaintiff prayed for judgment for the sum of $42 demurrage, the difference in the value of the seed, amounting to $878.32, and for protest fees, amounting to $6.06.

Watkins & Kelly answered by general and special exception, general denial, and specially that they sold the seed to Patterson, and that plaintiff refused to permit them to examine the seed, and by cross-action alleged as follows:

"And by way of cross-action these defendants aver that, when plaintiff made, published, and promulgated the allegations in its petition, plaintiff contracted with these defendants for a certain kind and quality of seed, and that the seed shipped by defendants were different in kind and quality from those called for in the contract, and were inferior to the kind called for in its contract with defendants, and charged that these defendants failed to comply with their contract of purchase and shipped to plaintiff inferior and damaged seed instead of seed which they contracted and agreed to ship; that they thereby charge and hold out to the world that these defendants are not honest and cannot be trusted to fulfill their contracts; that they will not stand by their contracts, and therefore cannot be trusted.

"These defendants allege that, when plaintiff made, published, and promulgated that charge, it well knew that it had made no contract in regard to said cotton seed with these defendants at all, and well knew that said allegations were false and were not made in good faith, but were made for the purpose and sole and only purpose of annoying, humiliating, and injuring these defendants, and for the purpose of wrongfully and fraudulently dragging their names into a lawsuit and to publish to the world that they are not honest business, and to place them in such position that by reason thereof they cannot sell and dispose of their cotton seed, and thereby keep them from buying cotton seed for sale and to deprive them from pursuing their business as cotton seed buyers and ginmen, and that by so doing plaintiff has damaged these defendants in the sum of $10,000, which they allege is due them as injury to their good names, and for expenses necessary to defend themselves in said lawsuit so wrongfully brought."

In addition to $10,000 damages the prayer is for damages for expenses of litigation.

The court sustained the general and several of the special demurrers to plaintiff's original petition, and on the 26th day of April plaintiff filed its amended petition, which is in effect identical with the original petition, except that it is alleged that the defendant Patterson in all things acted as the agent of the defendants Watkins & Kelly. The court then sustained a general demurrer to the amended petition.

After answer filed the plaintiff moved for a postponement, which was overruled. By motion plaintiff then asked to be permitted to enter a nonsuit. This motion was resisted by the defendants and overruled by the court; whereupon plaintiff filed its first supplemental petition, excepting generally to the entire answer and specially to the paragraphs of the answer copied above.

Defendant Patterson answered, admitting that he sold the seed to plaintiff at the price mentioned in plaintiff's petition and under the conditions therein stated, and that he

negotiated the sale as the agent of the defendants Watkins & Kelly, guaranteeing all of the seed to be sound, dry, free from dirt, trash, and bolls.

The case was tried before a jury, and, after all of the testimony had been offered, the court instructed the jury to return a verdict in favor of the defendants, Watkins & Kelly and E. A. Patterson, and to find for the plaintiff upon the cross-action of Watkins & Kelly. Verdict was returned and judgment entered accordingly.

[1-3] The first assignment is based upon the action of the court in overruling the plaintiff's motion for a postponement of the trial. It appears in the motion that Adrian Melton, of the law firm of Bond, Melton & Melton, who resided in Oklahoma, had exclusive control and management of the cause since and long prior to the filing of the suit; that no other member of the firm was familiar with it or had anything whatever to do with the prosecution thereof; that one member of the firm was in Washington City, and had been for some time; that the other member was engaged at the time the motion was filed in the argument of cases before the Supreme Court of Oklahoma; that Adrian Melton, the member of said firm who had handled the case, was in attendance upon the trial of a case at McAlester, Okl., which had been set long prior to the setting of this case in the district court at Wellington; that Melton was unable to obtain other counsel to try his said case at McAlester, which had been pending for more than two years, and that he could not obtain a continuance of said cause and could not reach Wellington, Tex., from McAlester, Okl., before the 27th day of April; that Orin Ashton, the local manager of the Apache Cotton Oil & Manufacturing Company was the one person connected with plaintiff who was familiar with the transactions out of which this lawsuit had arisen; that it was impossible to try the same without his testimony; that the facts to which he would testify could not be proved by any other witness; that he left the city of Chickasha on April 18th and could not return until after the 27th; that he had no knowledge of the setting of said cause at the time he left Chickasha, and was absent attending to other business of the plaintiff which required and demanded his personal attention, and which he could not abandon without great loss to his company and inconvenience to himself. The prayer was for the postponement of the case until after the 27th day of April, and was filed and presented on the 24th day of April, and promptly overruled by the court. The general rule is that the absence of a party or of the leading attorney is not ordinarily grounds for the continuance of a case, and does not at least give a party an absolute right to a continuance. If we take the statements in the application as true, a good excuse has

been shown for the absence of Adrian Melton, and we must further conclude that his presence was necessary, and that such absence was not anticipated. The fact that other counsel were present does not deprive the application of the equity in it, since it appears that local counsel were not familiar with the facts and were in no condition to try the case in the absence of Orin Ashton, the manager of the mill. It is not shown that the case was set for trial with the consent of plaintiff. We do not hold that under all the circumstances the showing entitled the plaintiff to a continuance for the term, but, since the court did not adjourn for the term until the 5th day of May, we think the postponement, as requested, should have been granted.

[4] The second assignment complains of the action of the court in sustaining the general demurrer to plaintiff's original petition. If this was error, it was waived when plaintiff filed an amended pleading. The effect of filing an amended pleading is to confess merit in the exceptions urged to the original. This assignment will be overruled. S. A. & G. S. Ry. Co. v. S. A. & G. Ry. Co., 76 S. W. 782; Barrett v. Ind. Tel. Co., 65 S. W. 1128.

[5] By the third assignment it is insisted that the court erred in overruling the plaintiff's motion for nonsuit. As we understand the motion, plaintiff did not attempt to dismiss the entire cause, but merely asked for permission to abandon its cause of action against the defendants. Vernon's Sayles' Civil Statutes, arts. 1900 and 1955, relating to this question, are as follows:

Article 1900: "Where the defendant has filed a counterclaim seeking affirmative relief, the plaintiff shall not be permitted, by a discontinuance of his suit, to prejudice the right of the defendant to be heard on such counterclaim."

Article 1955: "At any time before the jury have retired, the plaintiff may take a nonsuit, but he shall not thereby prejudice the right of an adverse party to be heard on his claim for affirmative relief," etc.

Appellees insist upon the broad proposition that, when affirmative relief is sought by the defendant, the court should not grant plaintiff a nonsuit. The proposition is sound in cases where the cross-action or plea in reconvention relates to the subject-matter of plaintiff's suit. In United Motor Co. v. Hendricks, 168 S. W. 878, the intervener was not permitted to take a nonsuit, but that is a case where plaintiff sought to foreclose a mechanic's lien. Intervener set up a chattel mortgage upon the property, and upon this plea plaintiff joined issue, praying that its lien be declared superior to the lien asserted by intervener.

In Dunlap v. Southerlin, 63 Tex. 38, where the validity and effect of a judgment was in issue as between the parties to it and those claiming under it, and where it was sought to cancel the judgment, the Supreme Court held that plaintiff would not be

allowed to enter a nonsuit. To the same effect is the case of Jackson v. Furst, Edwards & Co., 154 S. W. 243, where plaintiff sued upon a note and defendant alleged that the note was a mere tentative settlement, claiming credits in excess of the amount thereof, and prayed for its cancellation.

In Leverette v. Rice, 151 S. W. 594, plaintiff sued for the price of land. Defendant reconvened, praying for the cancellation of the contract, on the ground of fraud and misrepresentation, and it was held that plaintiff could not dismiss his action without prejudice. The instant case, however, does not come under the rule announced in the authorities cited. The cross-action of appellee, if maintainable at all, could have been prosecuted whether the plaintiff took a nonsuit or continued in the case. We think the correct rule applicable to cases of this kind is announced by the Supreme Court in Short v. Hepburn, 89 Tex. 622, 35 S. W. 1056. That was a contest, involving the title to land; the pleadings of both parties being in the form of an action of trespass to try title. The Court of Civil Appeals certified to the Supreme Court the inquiry if the plaintiff could take a nonsuit, dismiss the cause, and thereby deny to the defendant the right to be heard on the cross-bill. The Supreme Court replied that the plaintiff had the right to dismiss his own case, but this could not operate to discontinue the cross-action of the defendant if the allegations of the cross-bill were sufficient to entitle him to recover, and this seems to be the true rule. Burford v. Burford, 40 S. W. 602; Blank v. Robertson, 34 Tex. Civ. App. 387, 78 S. W. 564; Smith v. Wilson, 18 Tex. Civ. App. 24, 44 S. W. 556; Jungbecker v. Huber, 101 Tex. 148, 105 S. W. 487; Jones v. Wagner, 141 S. W. 280. It is further held that, where the answer does not set up facts sufficient to constitute a cause of action, plaintiff's right to discontinue cannot be denied. Hoodless v. Winter, 80 Tex. 638, 16 S. W. 427; Peters v. Chandler, 51 S. W. 281; Clevenger v. Cariker, 50 Tex. Civ. App. 562, 110 S. W. 796.

[6] This brings us to the consideration of the question as to whether the allegations of the answer and cross-action were good against the general demurrer. We are unable to decide whether defendants were seeking to recover damages because of the institution of an unfounded and vexatious suit or whether the ground of their damages is one for libel. If the former, the answer was unquestionably subject to a general demurrer. The institution of a civil action for the purpose of enforcing a claim affords no cause of action against the plaintiff, whether the claim be real or unfounded, provided the person or property of the defendant is not seized or in some manner injuriously affected. Vance v. Lindsey, 60 Tex. 286; Johnson v. King, 64 Tex. 226; Smith v. Adams, 27

Tex. 28; Haldeman v. Chambers, 19 Tex. 1; Runge v. Franklin, 72 Tex. 585, 10 S. W. 721, 3 L. R. A. 417, 13 Am. St. Rep. 833; Biering v. First National Bank, 69 Tex. 599, 7 S. W. 90. The case of Runge v. Franklin, supra, established the rule that charges of the kind complained of in this case, when appearing in the pleadings filed in civil cases, are absolutely privileged, and the pleader cannot be held to answer in damages. It follows from what has been said that the demurrer to the cross-action should have been sustained. Since this is the only affirmative relief claimed by defendants, plaintiff should have been permitted to take a nonsuit.

In view of what has been said above, it is not necessary to consider the remaining assignments, which relate to the court's action in overruling plaintiff's special exceptions to the answer.

For the errors indicated, the judgment is reversed, and the cause remanded.